

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIESSA NAGLE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-02630 |
| | : | |
| RMA, THE RISK MANAGEMENT | : | |
| ASSOCIATION | : | |
| | : | |

**FILED**

MAY 1 5 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### MEMORANDUM AND ORDER

Kauffman, J.                                                                    May 14, 2007

Plaintiff Cliessa Nagle ("Plaintiff") brings this action against RMA, The Risk

Management Association ("RMA" or "Defendant") alleging violations of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Pennsylvania Human

Relations Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA").  Specifically, Plaintiff alleges sexual

discrimination in the awarding of performance bonuses (Count I), retaliation (Count II),

constructive discharge (Counts I and II), and sexual discrimination in awarding performance

bonuses, retaliation, and constructive discharge in violation of the PHRA (Count III).  Now

before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow,

Defendant's Motion will be granted.

## I.      BACKGROUND

This case arises out of Plaintiff's resignation from her position as Assistant Controller at

RMA in Philadelphia, Pennsylvania.  She began working for RMA in April 2003 with an annual

salary of $61,000.  Deposition of Cliessa Nagle ("Nagle Dep.") at 74-75, attached to Defendant's

Motion for Summary Judgment ("Def. Mot.") at Exhibit A.  Within a year, she received a raise

of $4,000, bringing her annual salary to $65,000.  Id. at 76, 80.  In July 2004, Plaintiff received

1

**ENTERED**

MAY 1 5 2007

CLERK OF COURT

another raise of $2,000, bringing her annual salary to $67,000.  Id. at 80-81.  In 2004, she also received a performance bonus of $5,000.[1]  Id. at 82.

In September 2004, Plaintiff had a conversation with her supervisor, Dwight Overturf, RMA's CFO and Information Technology Officer, regarding women's pay.  Id. at 75, 151-52. During the discussion, she stated that it is difficult for women "to get paid fairly and paid well." Id. at 153-54.  This conversation was not about RMA specifically or about her personally.  Id. at 156-57.

Subsequently, Overturf had another conversation with Plaintiff regarding a request by RMA's CEO to carefully watch the amount of money spent by the company.  Id. at 160.  During this conversation, she told him that she did not receive credit when she saved the company money.  Id. at 160-61.  After this second conversation, Overturf sent Plaintiff an e-mail from his personal e-mail account.  Id. at 157, 165.  The e-mail contained a link to an article about "how to ask your boss for more."  Id. at 158, 162.  In her response e-mail, Plaintiff informed Overturf that she had not been aware of how angry she was about not getting credit for all the money she believed she had saved the company until their conversation.  Id. at 165-66.  She also wrote that she felt there was gender discrimination in the bonus pool among her peers supervised by Overturf, and that she was upset with his evaluation of her work.  Id. at 167, 176-77.

Overturf responded that he would discuss her concerns with Florence Wetzel, RMA's human resources officer.  Id. at 75, 185.  Plaintiff replied via e-mail that she preferred that he not discuss her concerns with Wetzel.  Id. at 185. Overturf then informed her that she had raised

---

[1]     Plaintiff also received a partial-year bonus of $1500 in September 2003 for the five to six months that she had been working at RMA.  Nagle Dep. at 209-210.  She has not claimed discrimination with respect to her 2003 bonus.

serious issues that merited further discussion.  Id. at 186.  According to Plaintiff, a normal working environment continued to exist after her e-mail exchanges with Overturf.  Id. at 187.

On November 18, 2004, Overturf informed Plaintiff that they would be meeting with Wetzel later that morning (the "November 18 meeting").  Id. at 187-89.  When she asked about the purpose of the meeting, he told her they would be discussing her e-mail regarding her allegations of discrimination in the bonus pool among her peers.  Id. at 189.  The meeting lasted approximately sixty-five minutes.  Id. at 225-26.  Plaintiff categorizes the meeting as "heated" and says she felt she was under attack.  Id. at 205.  She left the meeting in tears and went home for the rest of the day.  Id. at 222-225.

The following day, Plaintiff called Wetzel to ask for the necessary paperwork to request family leave.  Id. at 235.  She was absent from work for approximately one month after her physician concluded that she was under "severe emotional distress"and "in need of intensive therapy from a psychiatrist and psychologist with possible hospital stay."  Physician Certification for Family and Medical Leave at p. 2, attached to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl. Resp.") at Exhibit 4.

Plaintiff testified that when she returned to RMA, nothing out of the ordinary occurred other than that she felt that work was more "tense and uncomfortable."  See Nagle Dep. at 245-48; Affidavit of Cliessa Nagle ("Nagle Aff.") at ¶ 8, attached to Pl. Resp. at Exhibit 1.  On January 5, 2005, Plaintiff tendered her resignation because she had accepted employment elsewhere.  Nagle Dep. at 249.  She testified that during the time after the November 18 meeting until she left RMA, no one treated her unprofessionally or discourteously and no one did anything to humiliate, degrade, or intimidate her.  Id. at 249-50, 274-276.  In fact, the only time

3

Plaintiff contends she was harassed, insulted, or threatened with the loss of employment was the November 18 meeting. Id. at 277.

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") on December 2, 2004 and requested that her complaint be cross-filed with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a notice of right to sue on May 19, 2006.  Plaintiff filed this action on June 19, 2006, alleging sexual discrimination, retaliation, and constructive discharge.

## II.    LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for the motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that

burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

## III.   ANALYSIS

Title VII and the PHRA make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex. See 42 U.S.C. § 2000e-2(a); 43 Pa. Cons. Stat. § 955(a). The two acts are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII. See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably"). Therefore, the Court will analyze Plaintiff's wage discrimination, retaliation, and constructive discharged claims under Title VII, and the conclusions will apply equally to her claims under the PHRA.

### A.   Wage Discrimination Claims

Plaintiff claims that she was subject to sexual discrimination in the 2004 performance bonus Overturf awarded her. In order to establish a prima facie case of discrimination under Title VII, Plaintiff must demonstrate that (1) she is a member of a protected class; and that (2) she suffered some form of adverse employment action; (3) under circumstances that give rise to an inference of unlawful discrimination. See Lewis v. Kinko's of Ohio, 2004 WL 764382, at *7 (E.D. Pa. March 31, 2004) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (establishing the framework according to which courts should analyze Title VII discrimination claims). In the wage discrimination context, a plaintiff must "demonstrate that [she] performed

substantially similar work as compared to similarly situated employees who were not members of a protected class." Lewis, 2004 WL 764382, at *7 (citations omitted); see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996).

If a plaintiff carries her initial burden of establishing a prima facie case, the burden shifts under the McDonnell Douglas framework to the employer to articulate a legitimate, non-discriminatory reason for its action. See id. Once the employer articulates such a reason, the burden shifts back to the plaintiff to show by competent evidence that the articulated reason is pretextual. See id. at 805. A plaintiff who has made out a prima facie case may defeat a motion for summary judgment by "(1) discrediting the proffered reasons, either circumstantially or directly, or (2) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Defendant's Motion contends that "other than her own opinion," Plaintiff has not offered "any evidence that Overturf's 2004 bonuses to his supervisees were discriminatory." Def. Mot. at 13. Specifically, Defendant points to the facts that: (1) Plaintiff received a bonus, as a percent of salary, greater than two of the four males who reported to Overturf at the time, and (2) three (including Plaintiff) of the six females who reported to Overturf received a bonus, as a percent of salary, greater than two of the four males. See id. at 14-15. Defendant also argues that Plaintiff has failed to set forth a prima facie case because she has not demonstrated that she was similarly situated to the two males supervised by Overturf who received larger bonuses than she received, Alex Shenker and Frank McShay. See id. at 15.

6

In response, Plaintiff counters that her bonus of approximately 7.5% of her salary was discriminatory because Shenker and McShay, who she alleges were at similar organization levels and had similar department head responsibilities, each received a bonus of approximately 10% of their salaries.  See Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl. Resp.") at 11.  Plaintiff "from her observations as a manager and co-worker, did not believe the disparities were or could be explained by performance or other factors."  Id.[2]

"Different positions with different qualifications, even if they are superficially comparable, are not 'similarly situated'" for purposes of establishing a prima facie wage discrimination claim.  Ceasar v. Lamar Univ., 147 F. Supp. 2d 547, 552-53 (E.D. Texas 2001); see also Grosz v. The Boeing Co., 455 F. Supp. 2d 1033, 1045 (C.D. Cal. 2006) ("The standard for demonstrating that another employee is similarly situated is higher in the equal pay context: the jobs must require equal skill, effort, and responsibility and must be performed under similar conditions"); Bond v. Cross Roads Hospitality Co., 2006 WL 3313736, at *9 (N.D. Ga. Nov. 13, 2006) (employees were not similarly situated just because they reported to the same supervisor). Defendant has offered uncontradicted testimony that Plaintiff was not in the same department of the company as Shenker and McShay.  Moreover, her duties as Assistant Controller were not similar to Shenker's duties as Information Technology Administrator or McShay's duties as

---

[2]      Plaintiff's own belief that disparities in pay could not be explained by performance or other factors is not sufficient to survive summary judgment.  See Churchill v. Int'l Bus, Machines, Inc., 759 F.Supp. 1089, 1097 (D.N.J. 1991) (noting that conclusory statements, based on knowledge gained as a supervisor that females were paid less than males, have been found to be insufficient to create a prima facie discrimination case) (citation omitted); Cooper v. Southern Co., 260 F. Supp. 2d 1278, 1290 (N.D. Ga. 2003) ("Plaintiff's belief that her performance was equal to that of her co-workers does not support a finding that Plaintiff was actually qualified for the higher pay").

Information Services Manager.[3]  See Ceasar, 147 F. Supp. at 552-53 (E.D. Texas 2001) (noting

that employees in different departments with different job qualification requirements were not

similarly situated).  Furthermore, both Shenker and McShay had been employed by RMA longer

than Plaintiff and had received higher performance ratings than she.[4]  See Overturf Aff. at ¶¶ 6,

7.  Although Plaintiff argues that she, Shenker, and McShay were similarly situated because "all

[were] charged with managing their departments and the people in them" (Pl. Resp. at 12), she

has offered no evidence as to what the managing duties were or how they were similar.  Thus,

she has failed to create a genuine issue of material fact.

     A plaintiff's discrimination claim "fails where she compares [her] treatment to another

employee but cannot show that the other employee was similarly situated." Ceasar, 147 F. Supp.

---

[3]     Plaintiff's job duties involved "overseeing the general accounting, accounts
payable, and payroll systems.  She was also responsible for researching, developing and
maintaining a variety of financial reports for accounting and the audit and reconciliation of
general ledger accounts."  Affidavit of Dwight Overturf ("Overturf Aff.") at ¶ 4, attached to
Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment ("Def.
Reply") at Exhibit F.  Shenkar's position as Information Technology Administrator involved
"monitoring and coordinating systems' hardware and software installation, and maintenance."
Id. at ¶ 2.  He also monitored new releases of operating systems and software, and "translat[ed]
user needs into information systems' technical requirements and recommend[ed] technical
improvements to enhance performance, efficiency, and quality of information technology
systems as well as install[ed] and integrat[ed] the existing systems and software." Id.  McShay's
position as Information Services Manager involved "working collaboratively with various
internal staff to review existing processes, identify and develop new reports, computer systems,
and processes and formulate recommendations for management improving the efficiency and
effectiveness of RMA's current operational activities.  In addition, he was responsible for
maintaining and upgrading the financial and customer/membership information systems." Id. at
¶ 3.

[4]     Moreover, McShay, who had been at RMA for almost 13 years longer than
Plaintiff was in the same salary grade as she, but had a base salary in 2004 of $62,500 as
opposed to Plaintiff's base salary of $67,000.  See Pl. Resp. at Exhibit 2.  His salary combined
with his bonus in 2004 was $68,500; Plaintiff's combined compensation was $72,000.  See id.

2d at 552.  In this case, Plaintiff has not demonstrated that her work at RMA required the same

skill or qualifications, or that she was required to perform the same duties, as either of the two

males she has alleged were similarly situated.  Accordingly, Plaintiff has not set forth a prima

facie case of wage discrimination and the Court will grant summary judgment on this claim.

### B.    Retaliation Claims

Title VII makes it illegal for an employer to discriminate against an employee because

she opposed a practice made unlawful by Title VII or the PHRA, or because she participated in

any manner in an investigation or proceeding under either statute.  See 42 U.S.C. § 2000e-3(a);

43 P.S. § 955(d).  To establish a prima facie retaliation claim under Title VII, a plaintiff must

demonstrate that: (1) she engaged in a protected activity; (2) her employer took an adverse

employment action against her either after or contemporaneous with her protected activity; and

(3) there is a causal link between the protected activity and the adverse action.  See, e.g., Krouse

v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Stephenson v. City of Philadelphia,

2006 WL 1804570, at * 6 (E.D. Pa. June 28, 2006).  The fact that a plaintiff is unable to establish

an underlying sexual discrimination claim does not mean that she cannot establish a retaliation

claim.  See Moore v. City of Philadelphia, 461 F.3d 331, 344 (3d Cir. 2006) ("a victim of

retaliation 'need not prove the merits of the underlying discrimination complaint' in order to

seek redress") (citation omitted); Billings v. Town of Grafton, 441 F. Supp. 2d 227, 239 (D.

Mass. 2006).

Once a plaintiff establishes a prima facie retaliation case, the analysis follows the

McDonnell Douglas framework and the burden shifts to the employer to advance "a legitimate

non-retaliatory reason" for its adverse action.  See Krouse, 126 F.3d at 500.  If the employer

9

satisfies its burden in the second step, the plaintiff must convince the fact finder "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501.

In this case, the parties do not dispute that Plaintiff engaged in a protected activity when she complained to Overturf that she believed her bonus was discriminatory. However, the parties disagree as to whether Plaintiff suffered an adverse employment action as a result of her complaint. The Supreme Court recently has explained that for purposes of the second element of a prima facie case, "adverse employment actions" are not limited to "ultimate employment decisions." Burlington Northern & Santa Fe Ry. v. White, 126 S.Ct. 2405, 2414 (2006). Rather, a plaintiff making a retaliation claim can satisfy the second element by showing "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (internal quotations omitted). Title VII does not, however, "set forth a general civility code for the American workplace" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. (internal quotations omitted).

Plaintiff contends that after she alleged sexual discrimination in the awarding of bonuses on November 4, 2004, she was "harassed, insulted and threatened with loss of her employment" during the 65 minute meeting with Wetzel and Overturf on November 18. See Compl. at ¶¶ 34, 36, 37. She contends that these actions constituted an adverse employment action because she was left believing that her career with RMA was over, and as a result, was left disabled from

10

emotional distress.  See Nagle Aff. at ¶ 5.  Defendant counters that, although voices may have been raised at the meeting, a one-time incident such as the November 18 meeting does not rise to the level of an adverse action.  See Def. Mot. at 18.  Moreover, Defendant contends, Overturf and Wetzel were criticizing Plaintiff for "using confidential pay information for her own personal gain," not retaliating against her for alleging discrimination.  See Def. Reply at 11.

In Morrison v. Carpenter Tech. Group, 193 Fed. Appx. 148 (3d Cir. 2006), the Third Circuit, applying the Burlington Northern standard, affirmed the district court's finding that the plaintiff, who received a "Corrective Performance Review" for disruptive behavior associated with making a discrimination complaint, had not suffered an adverse employment action because he did not "identify, much less establish, any harm or injury" that resulted from the review.  Id. at 154.  The Court noted that the review did not result in economic loss or any change to the terms of his employment, and that there was no evidence regarding the significance of a single such review on his professional advancement.  Id.  Similarly, in this case, Plaintiff has not pointed to any injury or harm she suffered other than her own subjective belief that her career with RMA was over.  She was not fired at the November 18 meeting, nor were the terms of her employment altered in any way from the time of the meeting until she voluntarily resigned on January 21, 2005.  Moreover, because Plaintiff resigned shortly after she returned to work on December 21, 2004, there is no evidence that the November 18 meeting had any impact on her career with RMA.

Plaintiff contends that the November 18 meeting constituted retaliation because "no one would file a complaint of discrimination with her employer if she knew the only result would be insults, threats and angry recriminations."  Pl. Resp. at 14-15.  However, even taking the

11

allegations in the light most favorable to Plaintiff, the Court cannot conclude that a reasonable

employee would be dissuaded from making a discrimination claim based on a single meeting

with no evidence of further consequences to her resulting from that meeting.[5]  See, e.g., Billings,

441 F. Supp. 2d at 241-42 (finding that criticisms aimed at plaintiff's job performance and a

reprimand directed at her, "while certainly unpleasant," were not materially adverse actions since

they "were not shown to have had any tangible impact on her employment or future employment

relationship").[6]  Accordingly, since Plaintiff has failed to establish that she suffered an adverse

employment action, she has not made out a prima facie case, and the Court will grant summary

judgment on her retaliation claim.

### C.    Constructive Discharge

Plaintiff's final claim is that she was constructively discharged as a result of the

November 18 meeting.  In evaluating constructive discharge claims, courts in this circuit apply

---

[5]      Although Plaintiff contends that work was "tense and uncomfortable" when she
returned in December (Nagle Aff. at ¶ 8), a tense working environment following a
discrimination complaint is not evidence of a materially adverse action.  Cf. Billings, 441 F.
Supp. 2d at 242 n.20 (noting that more formal treatment of the plaintiff after she filed a
discrimination lawsuit was not a materially adverse action, but rather "a normal response to a
naturally awkward situation").

[6]      See also, e.g., Gordon v. Gutierrez, 2007 WL 30324, at *9 (E.D. Va. Jan. 4, 2007)
(finding that a plaintiff who had filed an EEOC complaint had not suffered an adverse
employment action because the subsequent verbal counseling she received was deserved, it was
properly conducted in the presence of another supervisor, and it resulted in no further
disciplinary action); Slaughter v. Day, 2007 WL 128319, at *4 (S.D. Tex. Jan. 11, 2007) (finding
that a plaintiff who had been counseled that her actions during an investigation into her
discrimination claim violated firm policy, and that any future violations could result in
disciplinary action, had not suffered an "injury or harm" that could reasonably be perceived as
"materially adverse"); Pugni v. Reader's Digest Assoc., 2007 WL 1087183, at *22-23 (S.D.N.Y.
April 9, 2007) (finding that a supervisor's "threat" that an employee's days at the company were
"numbered" did not constitute a materially adverse action since the alleged threat was never
carried out).

an objective test to determine whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984); see also Beaubrun v. Inter Cultural Family, et al., 2007 WL 172385, at *7 (E.D. Pa. Jan. 17, 2007). "Intolerability is not established by showing ... that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in [her] best interest to resign." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973 (3d Cir. 1988) (citation omitted). Instead, courts should assess intolerability "by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign, – that is, whether [s]he would have had no choice but to resign." Id. (citation omitted).

Plaintiff claims that she was constructively discharged because after the November 18 meeting she believed that her working relationship with her superiors had been permanently damaged and that she was subject to termination at any time. See Pl. Resp. at 17. However, other than her own subjective belief that she had no future at RMA following the November 18 meeting, she has offered no evidence of intolerable working conditions prior to or following that single incident. As the Third Circuit has noted, "[t]he law of constructive discharge is not concerned with subjective fears of possible future dismissal." Tunis v. City of Newark, 184 Fed. Appx. 140, 143 (3d Cir. 2006).

Plaintiff has acknowledged that prior to the November 18 meeting, she had not had any confrontations with either Wetzel or Overturf, and in fact, she characterized her working relationship with each as "very good." Nagle Dep. at 150-51. When she returned to work on December 21, 2004, "everyone was acting as if nothing had happened," and from December 21

13

until she resigned on January 21, 2005, no one treated her "unprofessionally" or "discourteously," and no one attempted to "humiliate," "degrade," or "intimidate" her.  Nagle Dep. at 245, 249-50, 275-76.  Moreover, Plaintiff has not offered any evidence that, following the November 18 meeting, she was encouraged to resign, was demoted or received a reduction in pay, was transferred to a less desirable position, had her job responsibilities altered, or received an unsatisfactory job evaluation.  See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993) (discussing factors to be considered when analyzing a constructive discharge claim).  Although Plaintiff does claim that work was "tense" upon her return (Nagle Dep. at 247), the employment discrimination laws do not "guarantee[] a working environment free of stress."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992).

Based on these circumstances, the Court finds that no reasonable trier of fact could conclude that Plaintiff's working conditions were so intolerable that she had no choice but to resign.  See Tunis, 184 Fed. Appx. at 143 ("While the law protects employees from concerted, calculated efforts to expel them or the imposition of unduly harsh conditions not visited upon their co-worker in order to force them to quit, it does not guarantee that they will not suffer frustrations, challenges, disappointments and discipline").  Accordingly, the Court will grant summary judgment on Plaintiff's constructive discharge claim.  See, e.g., Hare v. Potter, 2007 WL 841031, at *3, 12 (3d Cir. March 21, 2007) (affirming dismissal of constructive discharge claim where employer had, among other alleged instances of mistreatment, told employee she should not pursue her EEOC claim, caused employee to cry, and indicated that employee's discrimination claim might affect his perception of her).

IV.   CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIESSA NAGLE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-2630 |
| | : | |
| RMA, THE RISK MANAGEMENT | : | |
| COMPANY | : | |

**FILED**

MAY 15 2007

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## ORDER

**AND NOW**, this *14th* day of May 2007, upon consideration of Defendant's Motion for Summary Judgment (docket no. 16), Plaintiff's Response thereto (docket no. 17), and Defendant's Reply (docket no. 20), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**. Accordingly, the Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:

BRUCE W. KAUFFMAN, J.